GIBERSON (STEPHENSON v.). See Case No. 13,372.

GIBERT (UNITED STATES v.). See Case No. 15,204.

GIBNEY v. The WAVERLY. See Case No. 17,301.

---

## Case No. 5,389.

### GIBSON v. BARNARD et al.

[1 Blatchf. 388;[1] 1 Fish. Pat. Rep. 238.]

Circuit Court, N. D. New York. Oct. Term, 1848.

PATENTS—CONFLICTING ASSIGNMENTS—FAILURE TO FULFIL AGREEMENT.

1. W., the patentee of a patent which was about to expire, being about to apply for an extension, agreed with R. that he would convey to him a certain right under the extension, on certain terms. R. paid some money and gave some notes, on making the agreement. After the extension was granted, W. assigned to J. all his interest in the agreement with R. and in the right covered by it. R. refused to fulfil his part of the agreement, and, having used the patented thing from the time of the extension, to the extent of the right covered by the agreement, was sued by J. for infringement. During the pendency of the suit, J. granted to B. his interest in the right conveyed to him by W. The decision in the suit was that R. was entitled, aside from his agreement with W., to a portion of the right covered by it. After this decision, B. went on to use the patented thing, to the extent of the right covered by the grant from J., and R. continued to use it to the same extent. G., being the owner of the exclusive right to the extension for the territory in which both B. and R. were using the patented thing, with the exception of the right covered by the agreement between W. and R., by the assignment from W. to J., and by the grant from J. to B., filed a bill against B., praying for a perpetual injunction against him: *Held,* that the failure of R. to fulfil his agreement with W. did not of itself operate to annul and cancel the agreement, as the contract was partly executed and R. was in the use of the patented thing.

2. Although a court of equity might have decreed a surrender of the contract, and its cancellation on terms, yet, until then, R. must be deemed to have been in the lawful use and enjoyment of the right under the extension, and that an injunction should issue.

3. Even assuming the contract to have been annulled and the parties to have been remitted to their original rights, J. had power to grant to B. but a portion of the right he assumed to grant, as a part was awarded to R. in the suit between him and J.

This was a bill in equity [by John Gibson against Frederick J. Barnard, Samuel W. Barnard, and Henry Q. Hawley] to restrain perpetually the use of two of Woodworth's planing machines in the town of Watervliet in the county of Albany and state of New-York. The original term of the patent, fourteen years, expired on the 27th of December, 1842. On the 19th of May, 1842, an extension of the patent for seven years by the board of commissioners was in contemplation, and the plaintiff, John Gibson, became possessed of and then owned the exclusive right under such extension, if granted, for the city and county of Albany, with the exception of the right to two machines for the town of Watervliet in said county. The right thus belonging to Gibson he derived from William W. Woodworth, the administrator of William Woodworth, the patentee, who died in 1829. The two excepted machines consisted, first, of a machine then in use in the town of Watervliet by Louis Rousseau and Charles Easton, the right to use which during the original term of the patent had been conveyed to them by the administrator, and the right to continue to use which during an extension of the patent they claimed they would possess by virtue of the mere extension, and second, of a machine the right to use which in said town during the extension, Gibson conveyed to the administrator on the 19th of May, 1842. On the same day, the administrator agreed with

---

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

Rousseau & Easton, that in case the patent should be extended, he would execute to them an assignment by which they would become vested more fully with the right of running in the town of Watervliet, during the extension, the machine they were then using, and also conveying to them the right for the extension to the machine that day conveyed to him by Gibson. Rousseau & Easton paid the administrator $200 down, and agreed, if the extension should be obtained and the assignment be made as provided for, that they would pay him the further sum of $2000 in four equal annual installments. In November, 1842, an extension of the patent was granted, to run for seven years from the 27th of December, 1842. On the 26th of April, 1843, the agreement between the administrator and Rousseau & Easton, of the 19th of May, 1842, was modified by a mutual stipulation, which recited that the latter had that day given to the former eight promissory notes, for $250 each, payable at different periods, the last one July 1st, 1846, and agreed that on payment of the notes as they became due, the administrator should make the assignment provided for by the original agreement. On the 12th of August, 1844, the administrator assigned to James G. Wilson all his interest in said agreement with Rousseau & Easton respecting the right to the two machines, and all his right and title to the use of the same. Rousseau & Easton having refused to fulfil said agreement on their part, Gibson, on the 13th of November, 1844, renounced and released to Wilson all his right or claim, if any he had, to the said two machines. This was supposed to be necessary to enable Wilson to sue Rousseau & Easton for a breach of their contract or for an infringement of the patent as extended, they continuing to use the machines in the town of Watervliet during the extension, although they did not fulfil their agreement. Gibson claimed no right to the use of the two machines in Watervliet, but gave the release for abundant caution and the better to secure to Wilson the rights which he acquired under the assignment from the administrator. On the 5th of December, 1845, Wilson granted to the defendants a license to use two machines in the town of Watervliet during the extension, for which he was to receive $4000 from them, but it was further agreed that if the decision of the supreme court of the United States in a suit then pending before it, between Wilson and Rousseau & Easton, and involving the right to use the two machines, should be against Wilson, so as to exclude him from the use of them, then he was to repay to the defendants $2000 that day paid to him by them, and that if the decision should be in favor of Wilson, and the defendants should be put in possession of the right to use the two machines in Watervliet, then they were to pay Wilson a further sum of $2000. The suit here referred to is the case of Wilson v. Rousseau [Case No. 17,832], 4 How. [45 U. S.] 646, where many facts will be found, important to the more full understanding of this case. The decision of the supreme court was made in March, 1846, and gave to Rousseau & Easton the right to use during the extension, and by virtue of it alone, the one machine which they had in use at the time of the expiration of the original term of the patent. Rousseau & Easton used the two machines constantly from the commencement of the extended term, and were using them when this suit was commenced. Soon after the decision by the supreme court, the defendants constructed and put into use two machines in Watervliet, and Gibson filed this bill to restrain such use. The cause was heard on pleadings and proofs.

William H. Seward, for plaintiff.
Marcus T. Reynolds, for defendants.

NELSON, Circuit Justice. It is quite clear that down to the time of the grant by Wilson to the defendants on the 5th of December, 1845, the plaintiff possessed the exclusive right and title to the patent during the extension, for the county of Albany, with the exception of the two rights in the town of Watervliet, namely, the right to use one machine, claimed by Rousseau & Easton as accruing to them by virtue of the extension and of their having had the right to use it during the original term, and more effectually secured to them by the administrator, and the right sold and assigned by Gibson to the administrator, and by him to Rousseau & Easton. It is clear, also, that Wilson possessed no interest in the extended patent for the town of Watervliet, except as respected the two machines and the interest therein, which he derived by the assignment from the administrator of the 12th of August, 1844, the right to those machines having before been sold by the administrator to Rousseau & Easton, and they being in the actual use and enjoyment of them. Wilson, therefore, could grant his interest in those two rights, whatever it might be, and nothing more, and this was all that could pass to the defendants under the agreement of the 5th of December, 1845. The terms of that agreement also establish the fact that Wilson intended to sell, and the defendants to purchase, his interest in those two rights.

The failure of Rousseau & Easton to fulfil their agreement of purchase with the administrator, the interest in which belonged to Wilson, did not of itself operate to annul and cancel the agreement. It was a contract partly executed. Two hundred dollars of the purchase money had been paid and promissory notes given for the residue. The machines were in operation. And, although a court of equity might have decreed a surrender of the contract, and its cancellation on terms, yet, until then, Rousseau & Easton must be deemed to have been in the lawful

use and enjoyment of the two rights in Watervliet under the extended patent.

Even assuming the contract to have been annulled and the parties to have been remitted to their original rights, it is clear that Wilson had power to grant to the defendants but one of the rights, as the other was secured to Rousseau & Easton by the decision of the supreme court in the suit between Wilson and them. I am of opinion, therefore, that the defendants have failed to establish any right to run the machines in question, and that the plaintiff is entitled to a decree for a perpetual injunction.

[NOTE. For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.
[An appeal was taken by the defendants, but was dismissed by the supreme court, Mr. Justice McClain delivering the opinion, upon the ground that the appeal was not from the final decree; it appearing that the decree of the circuit court had referred the report to a master to ascertain the amount of damages, and that in the meantime the bill had not been dismissed, nor a decree rendered for costs. 7 How. (48 U. S.) 650.]